Hudspeth vs. Johnson.

Benjamin Hudspeth, Sheriff, plaintiff in error, vs. Lindsey Johnson, defendant in error.

A sheriff who collected Confederate money, and deposited it in a safe, where, in consequence of the absence of the owner of the safe with the key, it remained until it became valueless, is not liable for the nominal amount of such money in United States currency, but only for its actual value at the time of collection.

Rule against Sheriff.    Decided by Judge Clark.    In Baker Superior Court.    November Term, 1865.

At November term, 1865, of Baker Superior Court, a rule *Nisi* against the sheriff was granted, reciting that he had had in his hands a certain fi. fa. in favor of Johnson *vs.* Tinsley, a sufficient length of time to have made the money on the same, and calling upon him to show cause why he should not pay over to Wright & Warren, attorneys of plaintiff in fi. fa., the principal and interest due thereon.

The sheriff answered, that on the 11th of November, 1863, he collected the amount of the fi. fa. in Confederate money, "which amount he has on hand, and now here tenders the same to the plaintiff."

The parties agreed, in presence of the Court, to submit to the consideration of the presiding Judge all the matters of law and fact necessary to settle the rights of the parties.

The following evidence was introduced:

*Galloway* stated, that he called on the sheriff for the money collected on the fi. fa., in the early part of 1864, (April he believed.) The sheriff said the money was in Mr. Boggs's safe, that Boggs was absent on the coast, making salt, having with him the safe key, and the money could not be obtained. The sheriff did not, at any time, refuse to pay the money, but assigned this reason for not doing so. Witness, having an order from the plaintiff, spoke several times to the sheriff on the subject, and each time the latter made the same reply. Boggs was absent each time. He was engaged in making salt on the Gulf coast, but came home occasionally.

*Boggs*, introduced by the sheriff, stated that he was absent from Newton most of the years 1863 and 1864. The sheriff deposited his money in witness's iron safe, the only one in the town. At one time the safe could not be unlocked. In the spring, the sheriff made an ineffectual effort to open it with the key. Witness remained most of the time on the coast. He came home sometimes—came home after April, 1864. The sheriff kept his money in witness's safe.

*L. P. D. Warren*, also introduced by the sheriff, stated, that, as attorney, he had some executions against Tinsley; that he made the affidavit required by the Act of 1860, and caused some of his executions to be levied on Tinsley's property. He received of the sheriff Confederate treasury notes collected of Tinsley, over twelve hundred dollars, in the latter part of the year 1863. He had no difficulty in getting the amount mentioned out of the sheriff. Witness desired the collection of a portion of his fi. fas., and did not authorize the sheriff to collect others; but as he made the collection, witness took the amount from him.

It appeared that the November adjourned term of Baker Superior Court was held in January, 1864, that the regular May term was held on the second Monday in May, of the same year, and that the Court had not been held again until November, 1865.

The Court, on these facts, made the rule absolute, and ordered the sheriff to pay the principal, interest, and costs, in United States currency.

This is the error complained of.

Vason & Davis, } for plaintiff in error.
Strozier & Smith, }

Wright & Warren, for defendant.

Lumpkin, C. J.

Ought the sheriff to be held liable to pay to the plaintiff the money collected by him, in United States currency?

True, the excuse which he offers is hardly sufficient to saddle the plaintiff with the loss of the debt by the depreciation of the currency.   But our judgment is, that the Court ought to have left it to a jury to have decided what the Confederate money, under all the circumstances, was worth at the time, in available currency, and in the spirit of the ordinance of the Convention passed for the purpurpose of adjusting equities between parties situated as these are ; and such are the instructions which the Judge should submit to the jury, when the case is referred to them. We know full well, that the letter of that ordinance only applies to *contracts* made between June, 1861, and June, 1865; but we doubt not it will receive, as it ought to do, a much broader signification.

Judgment reversed.